# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CAROL E. RASOR,**

      **Plaintiff,**

**v.**                                          **Case No.  8:04-cv-2060-T-30MAP**

**EVERETT S. RICE, individually and in his
official capacity as Sheriff of the Pinellas
County Sheriff's Office, and JIM COATS,
individually and in his official capacity as
Chief Deputy of the Pinellas County Sheriff's
Office,**

      **Defendants.**

_____/

## ORDER

      THIS CAUSE comes before the Court upon Defendants' Motion for Summary
Judgment and Memorandum of Law in Support (Dkt. #103), Appendix filed in support of
Defendants' Motion for Summary Judgment and Memorandum of Law in Support (Dkt.
#104),  Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. #112),
Appendix filed in support of Plaintiff's Response to Defendants' Motion for Summary
Judgment (Dkt. #113), Affidavit of Carol Rasor (Dkt. #114), and the Deposition of Samuel
Lynn (Dkt. #115).  The Court, having considered the motion, memoranda, affidavits,
depositions, and being otherwise advised in the premises, finds that Defendants' Motion for
Summary Judgment should be granted in part and denied in part.

**Procedural Background**

Plaintiff, Carol Rasor (hereinafter referred to as either "Plaintiff" or "Rasor"), filed Plaintiff's Third Amended Complaint for Damages and Injunctive Relief (Dkt. #89-1) (the "Complaint").  In the Complaint, Plaintiff brings four causes of action as follows: Count I - Violation of Title VII and FCRA against Defendants Rice and Coats in their official capacity; Count II - Violations of Fourteenth Amendment and Section 1983 by Defendants Rice and Coats in their official capacities; Count III - Violations of Fourteenth Amendment and Section 1983 against Defendants Rice and Coats in their individual capacities; and Count IV - Violation of Rights under Florida Constitution Against Defendants Rice and Coats in their official capacities.

Defendants now move for summary judgment on Plaintiff's claims of sex discrimination, failure to promote disparate treatment, and retaliation.

**Factual Background**

Rasor, a female, commenced employment with the Pinellas County Sheriff's Office on August 10, 1981 as a deputy.  Rasor was promoted to sergeant in 1986, and further promoted to lieutenant in August 1991, in which capacity she has remained to date.  All of her performance evaluations have been above standards and she has never been formally disciplined.

When Sheriff Rice took office in January 1989, there were no female law enforcement officers holding any rank above sergeant at the Pinellas County Sheriff's Office ("PCSO").

Sheriff Rice Promoted Rasor to lieutenant in August 1991, making her the first female law enforcement lieutenant and highest ranking woman ever at PCSO.

In 1995, Sheriff Rice promoted Alexis Davis, an African-American female, to captain in the Detention and Corrections Bureau.

From 1991 until 2002, Sheriff Rice made no promotions of any gender to the rank of law enforcement captain.

In late 1996, Rasor requested and received a transfer to the Community Services Division.  Rasor was the only command level supervisor in that division and was solely charged with supervising the Community Policing Unit ("CPU").  The CPU was responsible for policing the French Villas, a government-subsidized apartment complex in St. Petersburg.

Between 1998 and 2000, Rasor's subordinates reported concerns to her on several occasions about St. Petersburg YMCA Youth Program Coordinator Chris Allen's inappropriate behavior toward children at the French Villas.  Rasor did not pursue an investigation regarding Chris Allen's behavior, but rather told her Community Policing Officers ("CPOs")[1] that they were not dealing "professionally" with Chris Allen and that they "were the ones with the problem."  In February 2000, CPOs Cunningham, Viera and Wojciechowski reported to Rasor that Chris Allen had failed to report suspected child abuse of one of the children in his care, as he was required to by Florida law.  Since Rasor did not appear interested in taking further action against Chris Allen, CPO Cunningham referred the

---

[1] See the affidavits of Robert Wojciechowski (Dkt. #104-23), Richard Tapia (Dkt. #104-24), William Cunningham (Dkt. #104-25), Marion Kent Viera (Dkt. #104-26), Christopher Laughlin (Dkt. #104-27), and Don Yuna (Dkt. #104-28).

abuse allegations concerning the child by her mother and the failure to report by Chris Allen to the Pinellas County State Attorney's Office in February 2000.

On March 2, 2000, PCSO victim advocate, Kimberly Jowell, reported to Rasor in a memorandum that Jowell suspected that Chris Allen was having inappropriate contact with other children in the French Villas as Jowell had observed Chris Allen that day inappropriately touching the female victim whose mother was being investigated for abuse. Rasor responded by inviting Chris Allen and his wife to the CPU offices on March 8, 2000, to discuss the allegations documented in Jowell's and the deputies' memoranda. Subsequent to the March 8, 2000 meeting, Rasor did not pursue an investigation into the reports against Chris Allen.

Ultimately, William Cunningham referred the Chris Allen matter to PCSO's Crimes Against Children's Unit. On May 14, 2000, PCSO detectives arrested Chris Allen. In January 2002, Chris Allen was tried and on February 5, 2002, found guilty of crimes against children and sentenced to nine years in prison.

Between March 4, 2000 and March 11, 2000, ten (10) of the fourteen (14) CPU deputies under Rasor's command requested transfers from CPU. None of the parties can remember a time in PCSO's history that such a mass request for transfer had occurred. Major Sam Lynn conducted an informal investigation of the deputies' reasons for requesting the transfers and determined that the reasons were inconsistent, but included the "Chris Allen situation." Subsequently, several negative newspaper articles were published about the delay

in responding to reports regarding Chris Allen's inappropriate activity.  On May 5, 2002, Sheriff Rice transferred Rasor out of CPU to court security.

Prior to January 2005, there was no formal promotion process for the ranks of captain and above.  Rather, individuals were promoted to the ranks of captain and major entirely at the discretion of the Sheriff, with recommendations from the Chief Deputy.  Until 2005, the positions for captain and major were not posted, and there was no application process, no interview process, and no criterion which the Sheriff or Chief Deputy followed in promoting individuals to these ranks.  Defendant Rice never appointed a woman to the rank of law enforcement captain or major and prior to 2005 Defendant Coats as Chief Deputy never recommended that a woman be appointed to the rank of law enforcement captain or major.

On January 2, 2003, the Pinellas County Sheriff's Office announced the approval of the agency's Equal Employment Opportunity Plan that was submitted to the U.S. Department of Justice for Civil Rights.  This plan created a captain position that would oversee efforts to diversify the agency's composition.  Sheriff Rice promoted Deputy Calvin Dennie to be appointed to the rank of captain in charge of the agency's diversity efforts (the "January 2003 Promotion").  Such promotion  allowed Dennie to bypass the ranks of sergeant and lieutenant.  Rice believed it was necessary to have an African-American as the PCSO Diversity Officer so that the Diversity Officer could effectively recruit applicants from the African-American community and assist African-Americans in preparing for entry level promotions.  Prior to being promoted Dennie was an African-American Media Spokesperson and Community Liaison.

Prior to June 2003, Rasor was informed that there would be several openings at the rank of captain.  On May 14, 2003, Rasor met with Chief Deputy Coats to discuss her promotional opportunities.  The "Chris Allen situation" was not mentioned.  On May 19, 2003, Rasor gave two copies of her resume, one for Deputy Chief Coats and one for Sheriff Rice.  Deputy Chief Coats cautioned Rasor not to be disappointed if she was not promoted.  Ultimately, Deputy Chief Coats did not recommend Rasor for promotion to captain.  No other females applied for the rank of captain at this time.  On May 20, 2003, a promotional memorandum from Sheriff Rice indicated five (5) white males were appointed to the rank of captain (the "May 2003 Promotions").[2]  All but one of the lieutenants promoted to captain had more time in grade and, more time in the agency than Rasor.  The other person promoted had more time in the agency than Rasor.  All of the lieutenants promoted to captain were highly recommended.

Subsequent to the May 2003 Promotions, Sheriff Rice recommended to Rasor that if she wanted to be promoted she should transfer back to patrol to re-prove herself as a leader.  Rasor was told that, "the penalty paid for the mishandling of the Chris Allen situation was she didn't get promoted."

On August 11, 2003, Rasor filed a Charge of Discrimination with the EEOC against Defendants for failing to promote on the basis of gender discrimination (the "First Charge of Discrimination").

---

[2] The January 2003 Promotion and the May 2003 Promotion will hereinafter together be referred to as the "2003 Promotions."

On September 10, 2004, Plaintiff filed this lawsuit against Defendants.

In November 2004, Jim Coats was elected Pinellas County Sheriff.

On January 25, 2005, Human Resources Director Herman Vincent announced the creation of the Captain's Promotional Process. Lieutenants interested in participating in this promotional process were directed to submit a memorandum to Sheriff Coats via chain of command by January 31, 2005, outlining the applicant's tenure with the PCSO, work experience and assignments, formal education, strengths and weaknesses, and any unique skills and/or qualifications the applicant possessed relevant to the position of law enforcement captain.

On January 28, 2005, Rasor applied for the position of law enforcement captain. Eleven male and two female lieutenants applied and participated in the interview process, including Rasor. On February 4, 2005, Rasor participated in an oral board where she was interviewed and rated by several upper-ranked officers as part of the Captain's Promotional Process. Rasor received above average scores in the oral board, and was one of the two highest-scoring applicants in the Captain's Promotional Process. Once again, Rasor was not recommended for promotion to captain. Rather, Chief Deputy Fowler specifically recommended that Rasor not be promoted because Fowler believed that Rasor had terribly mishandled the complaints she had received from her subordinates regarding Chris Allen's molestation of children and had concerns about Rasor's leadership ability compared to other candidates.

In February 2005, upon the recommendation of Chief Deputy Fowler, Sheriff Coats transferred Rasor to patrol in order to facilitate her career development to be promoted as captain.

On February 20, 2005, Sheriff Coats promoted two white males and one female (Lt. Dioquino) to the position of law enforcement captain (the "February 2005 Promotions").

On May 27, 2005, Rasor filed a second Charge of Discrimination with the EEOC against Defendants alleging retaliation for filing the First Charge of Discrimination and this lawsuit, and gender discrimination in relation to the February 2005 Promotions (the "Second Charge of Discrimination").

In June 2005, Rasor applied for a lateral transfer out of patrol to the Training and Community Education section.  Rasor was not selected for this position.

On June 9, 2005, Sheriff Coats promoted another male, Lt. Gary Schobel to captain in court security (the "June 2005 Promotion").  Schobel had greater seniority with PCSO than Rasor, but Schobel had only served for four months in court security prior to his promotion. Schobel was highly praised by his subordinates for his ability to interact and communicate with them and involve them in the decision making process.  There was no posting of this position, nor was an additional Captain's Promotional Process conducted to rank qualified applicants.  However, Sheriff Coats has stated that Rasor was considered as a possible candidate.  In his deposition Sheriff Coats acknowledged that in June of 2005 he received reports that she was doing a "satisfactory job" in patrol, but that at that time she had only been back on patrol for a few months.

On June 23, 2005, Rasor filed a third Charge of Discrimination with the EEOC against Defendants alleging retaliation for filing the First and Second Charges of Discrimination and this lawsuit, and gender discrimination in relation to the June 2005 Promotion (the "Third Charge of Discrimination").  She also included in the Third Charge of Discrimination the failure to select her for a lateral transfer.

In July 2005, Sheriff Coats promoted Lt. Dean LaChance to captain.  Rasor acknowledges that LaChance was "more qualified" than Rasor to be a captain and she "does not have a problem" with LaChance's promotion, which she admits was not retaliatory.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  <u>Anderson</u>,  477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." <u>Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248; <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.  <u>Verbraeken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

I.      **Legal Analysis**

     A.      **Gender Discrimination Claims**

In <u>McDonnell Douglas Corp. v. Green</u>, the Supreme Court created a framework for analyzing Title VII cases.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 804 (1973).  To prove discriminatory treatment through circumstantial evidence: (1) a plaintiff must make a *prima facie* case of discrimination; (2) then the burden shifts to the defendant

to show a nondiscriminatory reason for the employment action; and (3) then the burden shifts back to the plaintiff to establish pretext.  See id.  The plaintiff must prove that (1) she is a member of a protected minority group, (2) she applied and was qualified for a job for which the defendant was seeking applicants, (3) she was rejected despite her qualifications, and (4) the position was filled by a person outsider her class or remained open and the defendant continued to seek applicants from persons of the plaintiff's qualifications.  See id. at 802; see also Lee v. GTE Florida, Inc., 226 F. 3d 1249, 1253 (11th Cir. 2000).

The Court finds that the resolution of Plaintiff's sex discrimination claims will depend on whether the evidence presented at trial establishes that the Defendants' proffered reasons for not promoting Plaintiff to a captain position are pretextual.  Since Lt. Rasor was not disciplined or reprimanded after the arrest and conviction of Chris Allen, it appears that there is a question of fact as to whether Lt. Rasor's actions were so grievous as to prevent her promotion to the rank of captain for many years thereafter.  On this basis, Defendants' Motion for Summary Judgment as to Plaintiff's claims relating to sex discrimination is denied.

### B.    Disparate Impact Claims

To establish a *prima facie* disparate impact case, "a plaintiff in a sex discrimination suit must establish three elements: (1) that there is a significant statistical disparity between the proportion of women in the available labor pool and the proportion of women hired; (2) that there is a specific, facially-neutral, employment practice which is the alleged cause of the disparity; and finally; (3) that a causal nexus exists between the specific employment

practice identified and the statistical disparity shown.  E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir. 2000); See  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Cooper v. Southern Co., 390 F.3d 695, 716 (11th Cir. 2004).

According to Title VII, in the first stage of a disparate impact case, the complaining party must demonstrate that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.  In re Employment, 198 F. 3d 1305, 1311(11th Cir. 1999), quoting 42 U.S.C. §2000e-2(k)(1)(A)(I). To "demonstrate" means to "meet the burdens of production and persuasion."  Id.  The Supreme Court explained in Watson, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson, 487 U.S. at 994.

### 1.     Pre-Captain's Promotional Process Time Period (2003 and 2004)

It is undisputed that from 1991 until 2002, Sheriff Rice made no promotions of any gender to the rank of law enforcement captain.  In February 2003, Calvin Dennie, an African-American male, was promoted to the rank of law enforcement captain.  On May 20, 2003, Sheriff Rice promoted five (5) white males to the rank of captain.  Rasor submitted her resume for consideration prior to the May 2003 Promotions.

The mere fact that Defendants hired no women in 2003 or 2004 is not, alone, sufficient to impose Title VII liability.  See E.E.O.C. v. Joe's Stone Crab, Inc., 220 F. 3d 1263, 1276.  To hold otherwise would be to impose liability based on "bottom line"

reasoning which the Supreme Court has expressly forbidden.  See id.  In Watson, the Supreme Court made it clear that Title VII liability could not be based solely on "bottom line" statistical imbalances in an employer's workforce.  See Watson, 487 U.S. at 992 (explaining that it is "unrealistic to suppose that employers can eliminate, or discover and explain, the myriad of innocent causes that may lead to statistical imbalances in the composition of their workforces").  Further, "[a]s a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack.  Such a showing is an integral part of the plaintiff's *prima facie* case in a disparate-impact suit under Title VII."  Ward Cove Packing Co., Inc. V. Atonio, 490 U.S.642, 656-57(1989).

The evidence presented does not provide adequate data of a kind and degree sufficient to show that the practice in question has caused the complained of disparate impact on Plaintiff.[3]  Further, the evidence does not support a finding that Defendant's promotional process disparately impacted female lieutenants at PCSO.  Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's 2003 and 2004 disparate impact claims is granted as stated herein.

---

[3] Where the sample size used by a plaintiff in his statistical comparison is too small to be reliable and where a considerable part of the time period used for plaintiff's statistical comparison is not relevant, then such statistical evidence will not properly support a disparate impact claim. See Pope v. City of Hickory, N.C., 679 F.2d 20, 21 (4th Cir. 1982); see also Farmer v. Dothan City Schools, 2006 WL 354323, *5 (M.D. Ala. 2006)(disparate impact claim fails where plaintiff could not provide statistically meaningful evidence of discrimination during the relevant time period); Joe's Stone Crab, 220 F.3d 1263, 1276 (disparate impact analysis requires a significant legal disparity during a relevant time period).

## 2.      Captain's Promotional Process Time Period (2005)

On January 25, 2005, Human Resources Director Herman Vincent announced the creation of the Captain's Promotional Process.  Lieutenants interested in participating in this promotional process were directed to submit a memorandum to Sheriff Coats via chain of command by January 31, 2005, outlining the applicant's tenure with the PCSO, work experience and assignments, formal education, strengths and weaknesses, and any unique skills and/or qualifications the applicant possessed relevant to the position of law enforcement captain.

In February of 2005, eleven (11) male and two (2) female lieutenants applied and participated in the interview process, including Rasor.  On February 20, 2005, Sheriff Coats promoted two white males and one female (Lt. Dioquino) to the position of law enforcement captain.[4]  On June 9, 2005, Sheriff Coats promoted another male, Lt. Gary Schobel, to the rank of captain in court security.

Once again, the evidence presented does not provide adequate data of a kind and degree sufficient to show that the practice in question has caused the complained of disparate impact on Plaintiff.  Further, the evidence does not support a finding that Defendant's

---

[4] Thus, two out of eleven (approx. 18%) of the males who applied for a position were promoted, compared to one out of two (50%) of the females who applied for a position were promoted.

Captain Promotional Process disparately impacted female lieutenants at PCSO.  Accordingly,

Defendant's Motion for Summary Judgment as to Plaintiff's 2005 disparate impact claims

is granted as stated herein.

###### C.      Qualified Immunity

"The doctrine of qualified immunity protects government officials performing

discretionary functions from liability for civil damages as long as their actions do not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." Nelson v. Prison Health Services, Inc., 991 F.Supp. 1452, 1460 (M.D. Fla. 1997);

Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  "Entitlement to qualified immunity is a

question of law to be resolved by the district court prior to trial." Id.  Nevertheless, if the law

regarding an individual's constitutional or statutory rights is clearly established, the qualified

immunity defense ordinarily should fail.  See Harlow, 457 U.S. 800, 819.

A claim against a sheriff in his official capacity is equivalent to a claim against the

county.  Pompey v. Broward County, 95 F.3d 1543, 1545-46 n. 2 (11th Cir. 1996).  To assert

a §1983 claim against the county, a plaintiff must demonstrate the violation of a

constitutional right caused by enforcement of a policy or custom of the county.  See Greer

v. Hillsborough County Sheriff's Department, 2005 WL 2416031, *1 (M.D. Fla. 2005); see

also McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004), citing City of Canton, Ohio

v. Harris, 489 U.S. 378 (1989).

Additionally, a supervisory official may be personally involved in an equal protection

violation, and thus liable under §1983, where the official: (1) directly participated in the

alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) either created or continued an unconstitutional policy, custom or practice; or (4) was grossly negligent in managing the subordinates who caused the violation.  Martin v. New York State Dept. Of Correctional Services, 224 F. Supp.2d 434 (N.D.N.Y. 2002); Williams v. Smith, 781 F.2d 319, 322 (2nd Cir. 1986).

In the Complaint Plaintiff alleges that she was deprived of her constitutional right to equal protection under 42 U.S.C. §1983 and identified PCSO's policy of treating female law enforcement officers less favorably than male law enforcement officers as to promotional opportunities as a violation of her constitutional rights under §1983.  Further, Plaintiff has alleged that both Sheriff Rice and Deputy Chief/Sheriff Coats were personally involved in the violations, to wit: decisions not to promote her to the rank of captain.  As discussed above, the Court finds that a question of fact exists as to whether Defendants created or continued an unconstitutional policy, custom or practice of discrimination against Plaintiff on the basis of her gender resulting in a failure to promote her to the position of captain. Accordingly, Defendants' motion for summary judgment based on an affirmative defense of qualified immunity from Plaintiff's §1983 claims against Defendants' in their individual and official capacities is denied.

### D. Retaliation Claims

Plaintiff's retaliation claims are based on the February  2005 Promotions and June 2005 Promotion of other lieutenants to the rank of captain.

In order to establish a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) that she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events. Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998); Pennington v. City of Huntsville, 261 F.3d 1262, 1265-66 (11th Cir. 2001).

First, Plaintiff must show that she engaged in statutorily protected expression. The Court finds that Plaintiff has sufficiently established the first prong of this analysis. Accordingly, Plaintiff's three charges of discrimination with the EEOC constitute protected expression.

Second, Plaintiff must show that she suffered an adverse employment action. Defendants argue that Plaintiff cannot show that she suffered an adverse employment action, based on two reasons: (1) other lieutenants similarly qualified were also not promoted and (2) Rasor's situation remained the same after her charge.

An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities or adversely affects his or her status as an employee." Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). While the failure to promote does

constitute an adverse employment action, the Eleventh Circuit has ruled that a change in assignment or duties with no loss of pay, benefits, or title, is not an adverse employment action.  See Gupta, 212 F.3d 571, 587.

Thus, all allegations and charges relating to Defendants' failure to promote Plaintiff to the rank of captain constitute adverse employment actions.  The allegations contained in Plaintiff's Second and Third Charge of Discrimination and the Complaint filed in this lawsuit relating to Rasor's transfer from court security to patrol, however, do not constitute an adverse employment action unless the change in assignment resulted in loss of pay, benefits, or title.  The record is devoid of evidence showing that Rasor suffered a loss of pay, benefits, or title.  Accordingly, Plaintiff has failed to offer evidence supporting an adverse employment action as to Rasor's transfer from court security to patrol.

Third, to establish a *prima facie* retaliation case, Plaintiff must show that there is some causal relation between her statutorily protected activity and an adverse employment action. Plaintiff's mere belief, speculation, or conclusion that she was subject to retaliation does not create an inference of retaliation or satisfy her burden.  See Coutu v. Martin County Bd. Of County Comm'rs., 47 F.3d 1068, 1074 (11th Cir. 1995).  The mere fact that an adverse employment action occurs after protected activity is "insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  Sharkey v. Federal Express Corp., 2000 WL 230330, *4 (E.D. Pa. 2000).

Furthermore, the Supreme Court in Clark County School Dist. v. Breeden, 532 U.S. 268 (2001) held that "[t]he cases that accept mere temporal proximity between an employer's

sebut

knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close'..." Id. at 273 (citations omitted.)  The Supreme Court recognized that the federal courts hold that three (3) months is too long.  Id.

Finally, Defendants argue that Plaintiff presents no evidence of a "causal relation between the two events."   Defendants reason that Plaintiff's Second Charge of Discrimination was filed on May 27, 2005, more than 18 months after Plaintiff filed her First Charge of Discrimination and more than 8 months after Plaintiff filed this lawsuit.

Outside of Plaintiff's perception that her denial of a promotion in the February 2005 Promotions or June 2005 Promotion was retaliation for filing a charge with the EEOC and filing a lawsuit, Plaintiff has offered no evidence to support that the events were causally connected.  The Court notes that Defendants have offered two examples supporting a pattern of promotion on the part of PCSO even after EEOC charges and lawsuits were filed against PCSO in two separate actions by Rachel Hughes and Patricia Alvarez.[5]

Accordingly, this Court concludes that the temporal proximity between the filing of the June 2003 EEOC charge or the September 2004 lawsuit and PCSO's February 2005

---

[5] Rachel Hughes and Patricia Alvarez were both promoted to sergeant while their respective lawsuits were still pending.  In both cases the trial court ultimately entered summary judgment in favor of PCSO in regard to failure-to-promote claims.  See Rachel Hughes v. Pinellas County Sheriff's Department, Case No. 8:01-cv-70-T-30MSS; Patricia Alvarez v. Pinellas County Sheriff's Office, Case No. 8:01-cv-1316-T-23TBM.

Promotions are too remote to establish a causal connection.[6] See Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002)(three-month interval between protected conduct and termination did not support inference of causal connection); Kipp v. Missouri Highway and Transp. Comm'n., 280 F.3d 893, 898 (8th Cir. 2002)(two month period between protected conduct and termination "dillutes any inference of causation"); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999)(three month period alone insufficient to establish causation); Cooper v. City of North Olmstead, 795 F.2d 1265, 1272 (6th Cir. 1986)(discharge four months after filing of discrimination charge not causally linked to adverse employment action); Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004)(three months gap between plaintiff's protected conduct and the adverse employment action insufficient to establish causal connection); Wascura v. City of South Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001)(three and a half month period insufficient).  As a result, the Court concludes that the evidence presented by Plaintiff does not support a *prima facie* case of retaliation.  For these reasons, Defendants' Motion for Summary Judgment as to Plaintiff's claims relating to retaliatory behavior by Defendants in the February 2005 Promotions and June 2005 Promotion are granted as stated herein.

Accordingly, it is therefore ORDERED AND ADJUDGED that:

---

[6] Logically,  this Court also concludes that the temporal proximity between the filing of the June 2003 EEOC charge or the September 2004 lawsuit and PCSO's June 2005 Promotion are likewise too remote to establish a causal connection.  Further, Plaintiff has admitted that Lt. LaChance's promotion in July of 2005 was not retaliatory.

     1.     Defendants' Motion for Summary Judgment and Memorandum of Law in Support (Dkt. #103) is GRANTED IN PART AND DENIED IN PART as stated herein.

    **DONE** and **ORDERED** in Tampa, Florida on February 28, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2004\04-cv-2060.msj.wpd